IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action Nos. 99–cv–00571–EWN–PAC and 00–cv–02063–EWN–PAC

AMAZON, INC.,

      Plaintiff and Counterclaim Defendant,

v.

CANNONDALE CORP. and
DIRT CAMP, INC.,

      Defendants and Counterclaim Plaintiffs.

---

## ORDER AND MEMORANDUM OF DECISION

      This is a trademark-infringement and unfair competition case.  Plaintiff and Counterclaim Defendant Amazon, Inc. ("Plaintiff") alleges that Defendants and Counterclaim Plaintiffs Cannondale, Inc. ("Defendant Cannondale") and Dirt Camp, Inc. ("Defendant Dirt Camp"): (1) violated the Colorado law against unfair competition when Defendant Cannondale used the name and likeness of Melissa Giove in its catalog without Plaintiff's permission; and (2) misappropriated Plaintiff's right of publicity.  Additionally, Plaintiff contends that Defendant Cannondale materially breached its guarantee of Team Sports Mountain, Inc.'s ("TSMI") financing agreement.  This matter is before the court for resolution of pending motions on two related cases, 99–cv–00571 and 00–cv–02063, respectively.  With respect to civil action number

-1-

99–cv–00571, this matter is before the court on: (1) "Plaintiff's Motion For a Ruling On Whether Diversity of Citizenship Existed," filed August 19, 2005; (2) "Cannondale's Motion For Summary Judgment," filed August 30, 2005; and (3) "Plaintiff's Motion and Notice of Motion For Partial Summary Judgment," filed August 30, 2005.  With respect to civil action number 00–cv–02063, this matter is before the court on:  (1) "Plaintiff's Motion For A Ruling On Whether Diversity of Citizenship Existed," filed August 19, 2005; (2) "Plaintiff's Motion to Remand," filed August 19, 2005; (3) "Plaintiff's Motion and Notice of Motion For Partial Summary Judgment," filed August 30, 2005; and (4) "Cannondale's Motion For Summary Judgment," filed August 30, 2005. Jurisdiction is based on 28 U.S.C.A. § 1332 (2005).

## FACTS

### 1.    *Factual Background*

The facts of this case are fully set forth in my July 24, 2000, order and memorandum of decision, (Order and Mem. of Decision [filed July 24, 2000] [hereinafter "Order"]), and the Tenth Circuit's decision in *Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1273 (10th Cir. 2001). Thus, general familiarity therewith is assumed.  I briefly re-state the facts that are relevant to this Order and Memorandum of Decision.

Giove, a professional mountain bike racer, assigned the rights in her own name and likeness to Plaintiff.  (Pl.'s Mot. and Notice of Mot. For Partial Summ. J., Undisputed Facts ¶¶ 1–2 [filed Aug. 30, 2005 in civil actions 99–cv–00571 and 00–cv–02063 [hereinafter "Pl.'s

Br."][1]; *admitted at* Cannondale's Mem. in Opp'n to Pl.'s Mot. For Partial Summ. J., Statement of

Disputed Facts ¶¶ 1–2 [filed in civil actions 99–cv–00571 and 00–cv–02063Sept. 28, 2005]

[hereinafter "Def.'s Resp."].)  Plaintiff's Vice President and sole operating officer is Ben Giove,

Giove's father.  (Cannondale's Mot. For Summ J., Statement of Undisputed Material Facts ¶ 15

[filed Aug. 30, 2005 in civil actions 99–cv–00571 and 00–cv–02063] [hereinafter "Def.'s Br."];

*admitted in relevant part at* Pl.'s Br. in Resp. to Def.'s Mot. For Summ. J., Resp. to Def.'s

Statement of Undisputed Material Facts ¶ 15 [filed in 99–cv–00571 and 00–cv–02063 Sept. 22,

2005] [hereinafter "Pl.'s Resp."].)  Defendant Cannondale is a manufacturer of bicycles and

bicycle equipment.  (Pl.'s Br., Undisputed Facts ¶ 3; *admitted at* Def.'s Resp., Statement of

Disputed Facts ¶ 3.)  At all relevant times to this action, Volvo, the car company, and Defendant

Cannondale co-sponsored a mountain bike team known as the Volvo/Cannondale team.  (*Id.*,

Undisputed Facts ¶ 4; *admitted at* Def.'s Resp., Statement of Disputed Facts ¶ 4.)  From 1994

through 1998, Giove competed as a member of the Volvo/Cannondale team pursuant to contracts

between TSMI and Plaintiff.  (*Id.*, Undisputed Facts ¶ 5; *admitted at* Def.'s Resp., Statement of

Disputed Facts ¶ 5.)  Defendant Cannondale's 1998 contract with TSMI provided that Defendant

Cannondale had "the right to advertise and promote its affiliation with the team" and to "use the

team and team members photos in advertising and promotional materials."  (Def.'s Br., Statement

---

[1]Both Plaintiff and Defendant Cannondale submitted motions for summary judgment, and responses and replies thereto in both the first and second actions.  Additionally, Plaintiff submitted motions for a ruling on diversity and motions to remand in both the first and second actions.  All of the submissions are identical with respect to each action.  Thus, I refer to the respective submissions collectively as one submission.  For example, I refer to Plaintiff's motions for summary judgment submitted in the first and section actions collectively as "Pl.'s Br."

of Undisputed Material Facts ¶ 11; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of

Undisputed Material Facts ¶ 11.)  Starting in May 1998 through September 1998, Ben Giove and

TSMI had discussions regarding a possible renewal of Plaintiff's contract with TSMI for the 1999

racing season.  (*Id.*, Statement of Undisputed Material Facts ¶ 15; *admitted in relevant part at*

Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 15.)  Ultimately, TSMI

declined to discuss a renewal with Plaintiff until September 20, 1998, when TSMI advised Ben

Giove that "rather than make an unacceptably low contract offer, it would not offer Plaintiff or

Giove any new contract for 1999."  (*Id.*, Statement of Undisputed Material Facts ¶ 16; *admitted*

*at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 16.)

     *a.*     ***Defendant Cannondale's 1999 Catalog***

Defendant Cannondale, like many major bicycle companies, prints a yearly catalog of its

products, which it first distributes at the trade shows beginning in early September, to identify its

new products available for sale the following year.  (*Id.*, Statement of Undisputed Material Facts ¶

22; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 22.)  To

permit distribution of its catalog at the fall trade shows, Defendant Cannondale created its 1999

catalog in June and July of 1998.  (*Id.*, Statement of Undisputed Material Facts ¶ 24; *admitted at*

Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 24.)

Defendant Cannondale's 1999 catalog included Giove's name in four places and three

pictures of Giove depicting her as a member of the Volvo/Cannondale mountain bike team.  (Pl.'s

Br., Undisputed Facts ¶ 3; *admitted at* Def.'s Resp., Statement of Disputed Facts ¶ 3.)  Defendant

Cannondale contends that it created the catalog in 1998 and distributed the majority of the

catalogs during that year.  (Def.'s Resp., Statement of Disputed Facts ¶ 8; Def.'s Br., Ex. A–16 ¶ 10 [Decl. of Patrick Hus].)  Independent bicycle dealers and retail customers used Defendant Cannondale's 1998 catalog in selecting and ordering products from Defendant Cannondale.  (Pl.'s Br., Undisputed Facts ¶ 8; *admitted at* Def.'s Resp., Statement of Disputed Facts ¶ 8.)  In 1999, Defendant Cannondale distributed approximately 115,000 copies of its 1999 catalog.  (*Id.*, Undisputed Facts ¶ 11; *admitted at* Def.'s Resp., Statement of Disputed Facts ¶ 11.)  Plaintiff asserts that Defendant Cannondale had no right to use Giove's name and likeness in 1999 following the termination of its 1998 contract with TSMI.  (*Id.*, Undisputed Facts ¶ 12.)

Plaintiff alleges that it was injured in five ways by Defendant Cannondale's discrete use of Giove's picture in its 1999 catalog: (1) unwanted continued association with Defendant Cannondale; (2) being made to look unprofessional; (3) loss of potential sponsorships; and (4) loss of control over Giove's name and image.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 74; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 74.)  Plaintiff contends that Defendant Cannondale's 1999 catalog created a continued unwanted association with Defendant Cannondale.  (*Id.*, Ex. A–1 at 130–32 [Dep. of Ben Giove].)  Plaintiff cannot distinguish whether that "association" was created prior to the 1999 catalog.  (*Id.*, Ex. A–1 at 134–35 [Dep. of Ben Giove].)

> Q.    Do you believe that those five years of association with [Defendant] Cannondale, the Volvo/Cannondale team, created the association in people minds between [Giove] and Volvo/Cannondale?
> A.    I do.
>
> Q.    And that was done all before the 1999 catalog was published, correct?
> A.    Yes.

> Q.     Is there any way you can distinguish the effects of the 1999 catalog from the preceding five years of actual ridership and other associations with the Volvo/Cannondale team in effecting popular understanding of what team [Giove] was associated with?
>
> A.     The problem is that being in that 1999 catalog, it just seems it is an ongoing situation.  We were still part of the Volvo/Cannondale mountain bike race team, so it was just ongoing.
>
> Q.     Is there any way though you can distinguish the effects of the catalog from the effects of her five years prior association?
>
> A.     Is there any way I could personally, no.

(*Id.*)  Plaintiff's representative testified that he cannot define "unprofessional."  (*Id.*, Ex. A–1 at

143–44 [Dep. of Ben Giove].)  Specifically, Ben Giove testified that:

> A.     I think it is totally unprofessional what occurred.
>
> Q.     Again since you have testified that you don't follow what is done in the profession, why do you say this was unprofessional?
>
> A.     Because it is not the way I would operate.
>
> * * *
>
> Q.     It may be against what you would do if you had the choice, but you don't know that this is, in fact, something that is not done in the profession on a regular basis?
>
> A.     I don't know that it is done on a regular basis.  That is not my business.  My business concerns myself with [Giove].

(*Id.*)  Ben Giove testified that there was no way to measure the "actual harm" to Plaintiff or Giove

"from the supposedly unprofessional nature of the catalog."  (*Id.*, Ex. A–1 at 146 [Dep. of Ben

Giove].)

Plaintiff uses the phrases "loss of credibility" and "loss of control" to mean "confusion,"

amongst the general public with respect to Giove's endorsements.  (*Id.*, Statement of Undisputed

Material Facts ¶ 75[d]; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material

Facts ¶ 75[d].)  Ben Giove testified that there was no way to measure the harm to Plaintiff from

the alleged losses of credibility or confusion.  (*Id.*, Ex. A–1 at 146 [Dep. of Ben Giove].)  Finally,

Plaintiff cannot identify any actual sponsors it lost or any sponsor who declined to sign Giove to a

contract.

> Q.     Can you identify any potential sponsors who declined to sign [Giove] to a contract
>        or [Plaintiff] to a contract because of the catalog?
> A.     They wouldn't have told me that.
>
> Q.     So no one told you that the catalog was the reason that they wouldn't sign a
>        contract with you?
> A.     If they would have thought it, they wouldn't have amplified that to me.
>
> * * *
>
> Q.     So you can't identify any specific sponsors of opportunity that you lost because of
>        the 1999 Cannondale catalog?
> A.     I haven't even tried to.  I won't even go there.  It was not the thing to do.  Every
>        industry has them on code.

(*Id.*, Ex. A–1 at 147–48 [Dep. of Ben Giove].)  Plaintiff did not retain an expert witness to

quantify or otherwise elucidate its claims or any measure of damages, and instead contends that it

is seeking the fair market value of Giove's name or likeness.  (*Id.*, Statement of Undisputed

Material Facts ¶ 79; *admitted in relevant part at* Pl.'s Resp., Resp. to Def.'s Statement of

Undisputed Material Facts ¶ 79.)  Ben Giove, on behalf of Plaintiff, testified that he had no

knowledge of any benefit Defendant Cannondale derived from including Giove's name or likeness

in the 1999 catalog.  (*Id.*, Statement of Undisputed Material Facts ¶ 82, Ex. A–1 at 165–66 [Dep.

of Ben Giove]; *deemed admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 82.)[2]

## 2.    *Procedural History*

On March 22, 1999, Plaintiff filed its initial complaint in this court.  (Compl. For Unfair Competition and Violations of Right of Publicity [filed Mar. 22, 1999].)  Plaintiff asserted claims against Defendant Cannondale for: (1) unfair competition pursuant to 15 U.S.C. § 1125(a); (2) state-law unfair competition; and (3) state-law right of publicity.  (*Id.* ¶¶ 6–36.)  On May 17, 1999, Defendant Cannondale answered the complaint and asserted counterclaims based upon correspondence that Plaintiff's counsel had sent to various distributors of Defendant Cannondale's products threatening litigation if the distributors did not desist distributing the 1999 catalog. (Answer and Countercls. [filed May 17, 1999].)

On August 16, 1999, after seeking and receiving leave from Magistrate Judge Coan, Plaintiff filed an amended complaint.  (First Am. Compl. For Unfair Competition, Violations of Right of Publicity and Breach of Contract [Jury Trial Demanded] [filed Aug. 16, 1999]

_____

[2]Plaintiff asserts that "[a]ny concession made by Ben Giove related only to his personal knowledge and was not a concession of [P]laintiff's position."  (Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 82.)  Plaintiff's position is absurd.  Ben Giove is Plaintiff's Vice President and sole operating officer.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 15; *admitted in relevant part at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 15.)  Under Colorado law, officers are agents with authority to bind the company or corporation.  *Mortgage Inv. Corp. v. Battle Mountain Corp.*, 70 P.3d 1176, 1182 (Colo. 2003); *see also Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1231 (10th Cir. 2000) (a corporation may only act through natural persons as its agents or employees and, in general, any employee of a corporation may bind the corporation by his actions and statements made while acting within the scope of his employment).  Thus, by the very nature of Ben Giove's position as Plaintiff's Vice President and sole operating officer, his statements under oath are binding on Plaintiff.

[hereinafter "First Action"].)  In the first amended complaint, Plaintiff reasserted its first three

claims against Defendant Cannondale and added as Defendants Dirt Camp, TSMI, Team Sports,

Inc., and Thomas Shuler.  (*Id.* ¶¶ 3–5.)  Plaintiff asserted the following claims against Defendant

Dirt Camp: (1) false endorsement in violation of section 43(a) of the Lanham Act by

misappropriating Giove's name and likeness, ("fourth claim"); (2) state-law unfair competition,

("fifth claim"); and (3) violation of the state-law right of publicity ("sixth claim").  (*Id.* ¶¶ 39–65.)

Against TSMI, Team Sports, Inc., and Shuler, Plaintiff asserted claims for: (1) false endorsement

in violation of section 43(a) of the Lanham Act by misappropriating Giove's name and likeness

("seventh claim"); (2) state-law unfair competition ("eighth claim"); and (3) violation of the state-

law right of publicity ("ninth claim").  (*Id.* ¶¶ 66–78.)  Plaintiff also asserted two claims for breach

of contract against TSMI based upon: (1) TSMI allowing Defendants Cannondale and Dirt Camp

to use Giove's name and likeness after December 31, 1998 ("tenth claim"); and (2) TSMI's failure

to pay Plaintiff amounts owed under the TSMI/Amazon contract ("eleventh claim").  (*Id.* ¶¶

79–86.)  Finally, Plaintiff added a claim against Defendant Cannondale for breach of the guarantee

of TSMI's obligations under the TSMI/Amazon contract ("twelfth claim").  (*Id.* ¶¶ 87–90.)

Plaintiff asserted jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.  (*Id.* ¶ 6.)

On September 13, 1999, Defendant Cannondale filed its first amended answer and

counterclaims.  (Answer and Countercls. [filed Sept. 13, 1999] [hereinafter "Countercl."].)

Defendant Cannondale asserted counterclaims for: (1) violation of the Federal Trademark Act, 15

U.S.C. § 1051, *et. seq*, (*id.* ¶¶ 122–27); (2) state-law defamation for making false and defamatory

statements to Defendant Cannondale's distributors, (*id.* ¶¶ 129–33); and (3) state-law defamation

for writing false and defamatory letters to Defendant Cannondale's distributors.  (*Id.* ¶¶ 134–38.)

On November 16, 1999, Magistrate Judge Coan ordered the clerk of the court to enter

default against Defendant Dirt Camp under Federal Rule of Civil Procedure 55(a) for failure to

respond to Plaintiff's complaint.  (Min. Order [filed Nov. 16, 1999].)  On November 22, 1999,

Plaintiff reached a settlement with TSMI, Team Sports, Inc., and Shuler.  (11/23/99 Letter from

Plaintiff's Att'y to TSMI, Team Sports, Inc., and Shuler [filed Nov. 26, 1999].)  On January 7,

2000, Plaintiff, TSMI, Team Sports, Inc., and Shuler filed a stipulated motion for dismissal,

(Stipulated Mot. for Dismissal [filed Jan. 7, 2000]), which I granted on January 10, 2000.  (Order

of Dismissal with Prejudice [filed Jan. 10, 2000] [hereinafter "Order of Dismissal"].)

On January 25, 2000, Defendant Cannondale filed its initial motion for summary judgment.

(Cannondale's Mot. For Summ. J. [filed Jan. 25, 2000].)  Defendant Cannondale asserted that it

was entitled to summary judgment as to all of Plaintiff's claims because:  (1) Defendant

Cannondale's use of Giove's name and likeness in the 1999 catalog was not likely to cause

confusion under either federal or state unfair competition law; (2) Defendant Cannondale's use of

Giove's image was *de minimis* in nature and did not require Plaintiff's consent; (3) the

TSMI/Amazon contract bars Plaintiff's claims; and (4) Plaintiff's settlement with TSMI bars

Plaintiff's contract claim against Defendant Cannondale.  (*Id.*, *passim*.)  On February 25, 2000,

Plaintiff filed a motion for partial summary judgment as to its third claim for violation of Plaintiff's

right to publicity.  (Pl.'s Partial Summ. J. Mot. [filed Feb. 25, 2000].)  Plaintiff asserted that it was

entitled to summary judgment as to its third claim because Defendant Cannondale had no right to

use Giove's image after the termination of the TSMI/Amazon contract on December 31, 1998. (*Id.*)

On July 24, 2000, I granted Defendant Cannondale's motion for summary judgment in part and denied Plaintiff's motion as moot.  (Order.)  In doing so, I dismissed with prejudice Plaintiff's federal Lanham Act claim and denied Plaintiff's remaining state-law claims without prejudice to re-filing in state court.  (*Id.* at 29.)  Additionally, I dismissed Defendant Cannondale's first counterclaim as moot and dismissed the remaining state-law counterclaims without prejudice to re-filing because I declined to exercise supplemental jurisdiction over those claims.  (*Id.*)  On August 18, 2000, I entered an amended final judgment adding Defendant Dirt Camp to the judgment.  (Am. Final J. [filed Aug. 18, 2000].)  Specifically, I noted that "[j]udgment is entered in favor of Defendants Cannondale, Inc., and Dirt Camp, Inc. and against Plaintiff Amazon, Inc. and the Complaint and action are dismissed."  (*Id.*)

On September 7, 2000, Plaintiff filed a complaint in District Court in Boulder County, State of Colorado.  (Compl. And Jury Demand [filed Sept. 7, 2000] [hereinafter "Second Action"].)  Plaintiff asserted claims against Defendants Cannondale and Dirt Camp for "violation of common law right of publicity."[3]  (*Id.* ¶¶ 5–21.)

On September 18, 2000, Defendant Cannondale appealed my July 24, 2000 order and memorandum of decision to the Tenth Circuit.  (Notice of Appeal [filed Sept. 18, 2000].)

---

[3]Plaintiff asserts two claims for relief, both for "violation of common law right of publicity."  (Second Action ¶¶ 5–21.)  Plaintiff's two claims are identical, yet, Plaintiff couches them separately as against each Defendant.  I will evaluate these two claims as one, for violation of the state-law right of publicity.

Defendant Cannondale asserted that this court "had diversity jurisdiction over the state-law claims and should have addressed the merits rather than dismissing the claims." *Amazon*, 273 F.3d at 1274.

On October 18, 2000, Defendant Cannondale removed the second action to this court. (Notice of Removal of Action Under 28 U.S.C. § 1441[a] [Diversity] [filed Oct. 18, 2000].) Similarly, on October 18, 2000, Defendant Cannondale filed an answer to Plaintiff's second action. (Answer [filed Oct. 18, 2000].) On November 17, 2000, Plaintiff filed a motion to remand the second action back to the district court in Boulder, Colorado. (Pl.'s Mot. to Remand [filed Nov. 17, 2000].) Plaintiff asserted that diversity of citizenship did not exist. (*Id.*) On December 4, 2000, Defendant Cannondale filed a response to Plaintiff's motion to remand. (Cannondale's Opp'n to Mot. to Remand [filed Dec. 4, 2000].)

On February 14, 2001, the clerk of the court entered default against Defendant Dirt Camp in the second action for failure to respond to Plaintiff's complaint in the second action. (Notice of Default [filed Feb. 14, 2001].) On March 29, 2001, Defendant Cannondale filed a motion to stay the proceedings in the second action pending the outcome of the appeal of the first action to the Tenth Circuit. (Cannondale's Mem. of Supp. of Mot. to Stay [Mar. 29, 2001].) On May 4, 2001, I denied, without prejudice, Plaintiff's motion to remand the case to the district court in Boulder, Colorado and I granted Defendant Cannondale's motion to stay the proceedings pending the decision of the Tenth Circuit. (Courtroom Mins. [filed May 4, 2001].)

On December 6, 2001, the Tenth Circuit issued its decision in the first action. *Amazon*, 273 F.3d. at 1271. The Tenth Circuit determined that "[a] federal court has an independent

obligation to examine its own jurisdiction. . . . Here, the district court apparently did not consider whether it had diversity jurisdiction over [Plaintiff's] state-law claims." *Id.* at 1276 (internal citations omitted). The Tenth Circuit remanded the first action back to this court to determine whether this court has diversity jurisdiction. *Id.*

On January 30, 2002, during a status conference, I lifted the stay in the second action. (Courtroom Mins. [filed Jan. 30, 2002].) From this point through February 21, 2003, the parties filed motions to consolidate, motions to dismiss, motions to remand, and motions for summary judgment in both the first and second actions. On February 18, 2003, Defendant Cannondale filed a notice of bankruptcy. (Notice of Bankruptcy and Request for Vactur of Hearing [filed Feb. 18, 2003].) On February 21, 2003, I held a hearing on Defendant Cannondale's bankruptcy. (Courtroom Mins. [filed Feb. 21, 2003].) Specifically, I noted that Defendant Dirt Camp was in default in both the first and second actions and Plaintiff had not sought a default judgment. (*Id.*) Additionally, I determined that an automatic stay was in effect due to Defendant Cannondale's filing of bankruptcy protection. (*Id.*) I directed Plaintiff to file materials seeking a default judgment against Defendant Dirt Camp and I administratively closed the case against Defendant Cannondale, thereby dismissing all pending motions without prejudice. (*Id.*)

On March 6, 2003, Plaintiff filed a motion and notice of motion for default judgment. (Pl.'s Mot. and Notice of Mot. for Default J. [filed Mar. 6, 2003 in civil actions 99–cv–00571 and 00–cv–02063].) On May 8, 2003, I entered a default judgment against Defendant Dirt Camp in the amount of $500,000.00 in both the first and second actions. (Default J. [filed May 8, 2003] [hereinafter "Default J."].)

-13-

On June 17, 2004, Plaintiff filed a notice, in the first and second actions, that the bankruptcy court lifted the bankruptcy stay in effect with respect to Defendant Cannondale. (Notice of Lifting of Bankruptcy Stay [filed June 17, 2004].)  On August 19, 2005, Plaintiff filed a motion to determine whether diversity of citizenship existed in both the first and second actions. (Pl.'s Mot. For a Ruling On Whether Diversity of Citizenship Existed, Mem. of Law in Supp. of Pl.'s Mot. to Remand and Mot. For Ruling Whether Diversity of Citizenship Existed [filed Aug. 19, 2005 in civil actions 99–cv–00571 and 00–cv–02063] [hereinafter "Pl.'s Mot. Re: Diversity"].)  Despite initially asserting jurisdiction based on diversity of citizenship, Plaintiff contends that the parties are not diverse because Defendant Dirt Camp's principal place of business was at all times in Colorado.  (*Id.* at 2.)  Additionally, on August 19, 2005, Plaintiff filed a motion to remand both the first and second actions.  (Pl.'s Mot. to Remand, Mem. of Law in Supp. of Pl.'s Mot. to Remand and Mot. For a Ruling Whether Diversity of Citizenship Existed [filed Aug. 19, 2005 in civil actions 99–cv–00571 and 00–cv–02063] [hereinafter "Pl.'s Mot. to Remand"].)  On September 8, 2005, Defendant Cannondale filed a response, in both the first and second actions, to Plaintiff's motions to remand and for a ruling on whether diversity of citizenship existed.  (Cannondale's Mem. of Law in Opp'n to Mot. to Remand [filed Sept. 8, 2005 in civil actions 99–cv–00571 and 00–cv–02063] [hereinafter "Def.'s Resp. to Mot. to Remand"].)  On September 26, 2005, Plaintiff filed, in both the first and second actions, a reply in support of its motions to remand and for a ruling on whether diversity of citizenship existed.  (Reply Br. in Supp. of Pl.'s Mot. to Remand and For a Ruling on Whether Diversity Existed [filed Sept. 26, 2005 in civil actions 99–cv–00571 and 00–cv–02063] [hereinafter "Pl.'s Reply in Supp. of Mot.

-14-

to Remand"].)  On October 3, 2005, Plaintiff filed an unopposed motion to withdraw the motion

to remand in the first action.  (Unopposed Mot. to Withdraw Mot. to Remand [filed in civil action

99–cv–00571 Oct. 3, 2005].)  On November 8, 2005, I granted Plaintiff's motion to withdraw the

motion to remand with respect to the first action.  (Min. Order [filed Nov. 8, 2005].)

On August 30, 2005, Defendant Cannondale filed a motion for summary judgment in both

the first and second actions.  (Def.'s Br.)  Defendant Cannondale alleges that it is entitled to

summary judgment on Plaintiff's three remaining state-law claims.  (*Id.*)  Specifically, Defendant

Cannondale contends that: (1) Plaintiff's state-law unfair competition claim must be dismissed

because it is identical to Plaintiff's already dismissed federal Lanham Act claim; (2) Plaintiff's

state-law right of publicity claim must be dismissed because Plaintiff cannot demonstrate injury or

causation; and (3) Plaintiff conceded its guarantee claim.  (*Id.* at 27–38.)  On September 22,

2005, Plaintiff filed a response, in the first and second actions, to Defendant Cannondale's motion

for summary judgment.  (Pl.'s Resp.)  On October 11, 2005 and October 12, 2005, Defendant

filed duplicative replies, in the first and second actions, in support of its motion for summary

judgment.  (Cannondale's Reply Mem. of Law in Further Supp. of Mot. for Summ. J. [filed Oct.

11, 2005 and Oct. 12, 2005 in civil actions 99–cv–00571 and 00–cv–02063] [hereinafter "Def.'s

Reply"].)

Similarly, on August 30, 2005, Plaintiff filed a motion for summary judgment.  (Pl.'s Br.)

Plaintiff alleges it is entitled to summary judgment on its state-law right of publicity claim because

Defendant Cannondale did not have the right to use Plaintiff's photographs in 1999.  (*Id.*)  On

September 28, 2005, Defendant Cannondale filed a response, in the first action, to Plaintiff's

motion for summary judgment.  (Def.'s Resp.)  On September 29, 2005, Defendant Cannondale

filed a response, in the second action, to Plaintiff's motion for partial summary judgment.

(Cannondale's Mem. in Opp'n to Pl.'s Mot. For Partial Summ. J. [filed in civil action

00–cv–02063 Sept. 29, 2005] [hereinafter "Def.'s Resp."].)[4]  On October 17, 2005, Plaintiff filed

a reply, in the first and second actions, in support of its motion for summary judgment.  (Pl.'s

Reply Br. in Supp. of Pl.'s Mot. For Summ. J. [filed Oct. 17, 2005 in civil actions 99–cv–00571

and 00–cv–02063] [hereinafter "Pl.'s Reply"].)

## ANALYSIS

### 1.      *Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and the . . . moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)

(2003); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Concrete Works, Inc.*

*v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the

initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the

burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material

matter."  *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Celotex Corp.*, 477 U.S. at 325).  The

---

[4]Defendant Cannondale's responses to Plaintiff's motion for summary judgment in the first
and second actions are identical.  The court is unsure as to why the responses were docketed on
different days.  Accordingly, I refer to them both as "Defendant's Response."

nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "'Only disputes over facts that might affect the outcome of the suit under governing law will preclude the entry of summary judgment.'" *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998) (quoting *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 [10th Cir. 1990].)

2.      ***Plaintiff's Motion to Remand and Motion For Ruling on Diversity***

The Tenth Circuit remanded the first action to this court to determine whether diversity jurisdiction existed in the first action. *Amazon*, 273 F.3d at 1273. Additionally, Plaintiff filed a motion for ruling on whether diversity existed in the first and second actions and a motion to remand in the second action. (Pl.'s Mot. Re: Diversity at 1; Pl.'s Mot. to Remand at 1.) Plaintiff argues that diversity of citizenship does not exist in either the first or second actions, and the second action should be remanded to state court. (*Id.*) Despite initially pleading that the parties were diverse, (First Action ¶ 6), Plaintiff now argues that Defendant Dirt Camp destroys diversity jurisdiction because its principal place of business was at all relevant times in Colorado. (Pl.'s Mot. to Remand at 3.) Specifically, Plaintiff asserts that diversity jurisdiction is established at the time the actions were filed and the parties were not diverse at the "time of the commencement of

[both] lawsuits." (Pl.'s Reply in Supp. of Mot. to Remand at 5.)  Defendant Cannondale, on the

other hand, asserts that diversity jurisdiction was properly laid in the first and second actions, and

even if jurisdiction was not properly laid, "it is no longer an issue now that final judgment has

been entered against [Dirt Camp]." (Def.'s Resp. to Mot. to Remand at 8.)  The parties concede

that Plaintiff and Defendant Cannondale are diverse.  The issue lies with the now dismissed

Defendant Dirt Camp.

Jurisdiction of the federal courts "'depends upon the state of things at the time of the

action brought.'"  *Grupo DataFlux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004)

(quoting *Mollan v. Torrance*, 9 Wheat. 537, 539 [1824]).  The court must measure all challenges

to subject-matter jurisdiction against the state of facts that existed at the time of the filing,

regardless of "whether the challenge be brought shortly after filing, after the trial, or even for the

first time on appeal." *Id.* at 571.  While the "time of filing" rule is absolute, there are a few

exceptions.  *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 73 (1996); *Newman-Green, Inc. v.

Alfonzo-Larrain*, 490 U.S. 862, 832 (1989).  One is that the court may cure a jurisdictional defect

by dismissing a non-diverse party at any time, even after judgment has been rendered.  *See Grupo

DataFlux*, 541 U.S. at 572; *see also Newman-Green*, 490 U.S. at 832.

 Federal Rule of Civil Procedure 21 states that: "[p]arties may be dropped or added by

order of the court on motion of any party or of its own initiative at any stage of the actions and on

such terms as are just." Fed. R. Civ. P. 21 (2005).  It is well settled that Rule 21 "invests district

courts with authority to allow a dispensable nondiverse party to be dropped at any time, even

after judgment has been rendered." *Newman-Green*, 490 U.S. at 832.

Here, I do not need to address whether Defendant Dirt Camp's presence in this lawsuit destroys diversity because Plaintiff moved for, and the court entered, default judgment against Defendant Dirt Camp.  (Default J.)  Thus, even assuming Defendant Dirt Camp's presence did destroy diversity, Defendant Dirt Camp is no longer a party.  On May 8, 2003, following application by Plaintiff, I entered a default judgment against Defendant Dirt Camp in the amount of $500,000 in both the first and second actions.  (Default J.)  This order effectively dismissed Defendant Dirt Camp from both the first and second actions.  Thus, even assuming Defendant Dirt Camp's presence destroyed diversity, the less-than-complete diversity which had allegedly existed has ultimately been converted to complete diversity between the remaining parties — Defendant Cannondale and Plaintiff.  *See Grupo DataFlux*, 541 U.S. at 573.  This is the quintessential example of the exception to the "time-of-filing" rule.

The instant case is analogous to *Caterpillar* and *Newman-Green*.  In *Caterpillar*, complete diversity had been lacking at the time the defendants removed the case to federal court because one of the plaintiffs shared Kentucky citizenship with one of the defendants.  *Caterpillar*, 519 U.S. at 64–66.  Almost three years after the district court denied the plaintiff's motion to remand, but before the trial on the merits, the diversity-destroying defendant settled out of the case and the court dismissed that defendant.  *Id.* at 67.  *Caterpillar* proceeded to a jury trial resulting in judgment for the defendant.  *Id.*  The plaintiff appealed the judgment arguing that the federal district court did not have subject matter jurisdiction.  *Id.*  The Court of Appeals for the Sixth Circuit concluded that the district court "erred in denying [the plaintiff's] motion to remand this case to the state court for lack of subject-matter jurisdiction."  *Id.*  On appeal, the United

States Supreme Court unanimously held that the lack of complete diversity at the time of the

removal did not require dismissal of the case because the dismissal of the diversity-destroying

defendant cured the jurisdictional defect.  *Id.*

Similarly, in *Newman-Green*, the plaintiff brought a state-law contract action in federal

district court against a foreign corporation, four foreign citizens, and one United States citizen

domiciled in Venezuela.  *Newman-Green*, 490 U.S. at 828.  The district court subsequently

granted partial summary judgment in favor of the plaintiff and granted partial summary judgment

in favor of the defendants.  *Id.*  The plaintiff appealed and the Court of Appeals for the Seventh

Circuit determined that the parties were not diverse because United States Code Title 28

"[s]ubsection 1332(a)(2), which confers jurisdiction in the [d]istrict [c]ourt when a citizen of a

State sues aliens only, also could not be satisfied because [one of the defendants] is a United

States citizen" in addition to a foreign citizen.  *Id.*  The Court of Appeals determined that the one

defendant destroyed diversity jurisdiction.  *Id.* at 829.  The plaintiff asked the Court of Appeals to

dismiss the diversity-destroying defendant.  *Id.*  The Court of Appeals declined this request and

determined that it did not have authority to dismiss a jurisdictional spoiler.  *Id.*  Rather, the Court

of Appeals remanded the case to the district court to determine if it would be prudent to dismiss

the diversity-destroying defendant.  *Id.*  The plaintiff appealed to the United States Supreme

Court.  *Id.*  The United States Supreme Court determined that appellate courts have the power to

dismiss jurisdictional spoilers to preserve jurisdiction and the dismissal of the diversity-destroying

defendant had cured the jurisdictional defect.  *Id.* at 837–38.

Here, the order of default judgment entered on May 8, 2003 against Defendant Dirt Camp is akin to the post-settlement dismissal of the diversity-destroying defendant in *Caterpillar* and the dismissal of the diversity-destroying defendant in *Newman-Green*. Assuming Defendant Dirt Camp's presence in this lawsuit destroyed diversity, "the less-than-complete diversity which had subsisted throughout the action had been converted to complete diversity . . ." *See Grupo DataFlux*, 541 U.S. at 573.

Plaintiff offers one argument that counsels against this result. Plaintiff contends that while Defendant "Dirt Camp is not litigating it is still part of both cases." (Pl.'s Reply in Supp. of Mot. to Remand at 8.) Plaintiff's argument is disingenuous. Plaintiff received a judgment against Defendant Dirt Camp in the amount of $500,000, thereby eliminating Defendant Dirt Camp from both actions. (Default J.) Plaintiff cannot now claim that Defendant Dirt Camp is still part of both cases in an effort to destroy diversity. Thus, since the parties do not contest the fact that Defendant Cannondale and Plaintiff are diverse, this court retains subject-matter jurisdiction over the first and second actions and Plaintiff's motion to remand the second action is denied.[5]

### 3.   *Evaluation of Plaintiff's Claims*

Plaintiff's remaining claims against Defendant Cannondale in the first action are for violations of: (1) state-law unfair competition, (First Action ¶¶ 25–30); (2) state-law right of publicity, (*id.* ¶¶ 31–38); and (3) Defendant Cannondale's guarantee of TSMI's obligations. (*Id.*

---

[5]Upon a determination that this court has subject matter jurisdiction over Plaintiff's first and second actions, I proceed to a determination of the merits of these cases. I note that Defendant Cannondale's counterclaims in the first action are now properly before this court. These counterclaims are not addressed in either party's motions for summary judgment. Thus, these claims remain pending before this court.

¶¶ 87–90.)  Plaintiff's only claim in the second action is for violation of the state-law right of

publicity.  (Second Action ¶¶ 5–21.)  Plaintiff's right of publicity claim is identical with respect to

both actions.  Thus, I evaluate the claims together.  I evaluate Plaintiff's claims with respect to

both actions below.

      *a.*      ***Unfair Competition***

      As pled, Plaintiff's state-law unfair competition claim is nearly identical to its previously

dismissed Lanham Act claim for unfair competition.  (*Compare* First Action ¶¶ 7–24, *with* First

Action ¶¶ 25–30; *See also* Order at 28.)  Both counts allege that Defendant Cannondale

committed unlawful activity by misusing Giove's "name, trademark, and likeness."  (First Action

¶¶ 13–19, 26–28.)  Specifically, Plaintiff claims that Defendant Cannondale's use of Giove's name

and likeness in its 1999 catalog constitutes a false endorsement of Defendant Cannondale by

Giove.  (*Id.*)

      The legal test for Plaintiff's state-law unfair competition is similar to Plaintiff's already

dismissed Lanham Act claim.  Under the Lanham Act, a false endorsement claim based upon the

alleged unauthorized use of a celebrity's identity is a type of false association claim.  *Waits v.*

*Frito-Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir. 1992).  Such a claim "alleges the misuse of a

trademark, i.e., a symbol or device such as a visual likeness, vocal imitation, or other uniquely

distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship

or approval of the product."  *Id.*  A false-endorsement claim exists where a defendant's conduct

has allegedly created a likelihood of confusion as to whether the plaintiff is endorsing the

defendant's product or service.  *Wendt v. Host Intern., Inc.*, 125 F.3d 806, 812 (9th  Cir. 1997).

Under Colorado law, the legal test for unfair competition is similar to that described above. Specifically, the test revolves around "whether the public is likely to be deceived" or confused regarding a celebrity's endorsement of a particular company or product. *Coherent, Inc. v. Coherent Tech., Inc.*, 236 F. Supp. 1055, 1068 (D. Colo. 1990) (citing *Swart v. Mid-Continent Refrigerator Co.*, 360 P.2d 440, 442 [Colo. 1961]).

> In granting summary judgment on Plaintiff's Lanham Act claim, I held that:
>
> the uncontroverted facts fail to establish [Defendant] Cannondale's intent, in including []Giove's name and likeness in the 1999 catalog, to confuse customers as to []Giove's sponsorship or endorsement of [Defendant] Cannondale's products. In addition, the use of []Giove's name and likeness is extremely minor when considered in the context of the whole catalog, which both bolsters my conclusion regarding [Defendant] Cannondale's intent and substantially reduces the likelihood that a consumer would even notice []Giove's presence, much less be confused by it.  Most importantly, the higher degree of care which [Defendant] Cannondale's customers exercise and the lack of evidence of actual confusion militate heavily against a finding that a likelihood of confusion exists.

(Order at 28.)  My ruling on the Lanham Act claim applies equally to Plaintiff's state-law unfair competition claim, and that decision is the law of this case.  Since the state-law unfair competition claim is not any different from Plaintiff's Lanham Act claim, I must dismiss Plaintiff's state-law unfair competition claim.

While Plaintiff did not expressly confess this particular claim, Plaintiff did not respond to Defendant Cannondale's motion for summary judgment regarding this claim or produce any evidence in support of this claim.  (Pl.'s Resp., *passim.*)  Plaintiff's response focuses exclusively on Plaintiff's right of publicity claim.  (*Id.*)  Additionally, Plaintiff's motion for summary judgment and the submissions associated therewith do not discuss Plaintiff's state-law unfair competition

-23-

claim.  (Pl.'s Br., *passim*.)  Plaintiff's silence cannot defeat Defendant Cannondale's motion for

summary judgment.  Rather, Plaintiff must submit evidence to defeat a motion for summary

judgment.  *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999).  Moreover, upon this

court's dismissal of Plaintiff's state-law unfair competition claim without prejudice in the first

action, Plaintiff did not assert a claim for unfair competition against Defendant Cannondale in the

second action.  (Second Action, *passim*.)  For the reasons stated above, Defendant Cannondale is

entitled to summary judgment on Plaintiff's second claim for relief — state-law unfair

competition.

        **b.**      ***Right of Publicity Claim***

      From the outset I note that there is some discrepancy regarding which forum state's law

applies to the evaluation of this claim.  (Pl.'s Br. at 5–8.)  Plaintiff seems to intimate that

Connecticut or Wisconsin law may apply, but then states "Colorado law should govern."  (*Id.* at

7.)  Defendant Cannondale applies Colorado law to this issue.  (Def.'s Br. at 28–38.)  Thus,

because both parties apply Colorado law, I will evaluate Plaintiff's right of publicity claim under

Colorado law.

      "Some courts . . . have recognized a 'right of publicity' which permits plaintiffs to recover

for injury to the commercial value of their identities."  *Donchez v. Coors Brewing Co.*, 392 F.3d

1211, 1220 (10th Cir. 2004).  As noted in *Donchez*, the "Colorado Supreme Court does not

appear to have expressly recognized this tort."  *Id.*  Despite this, the parties in the instant case

seem to agree that Colorado recognizes a tort for "right of publicity" and the elements set forth in

*Joe Dickerson & Assoc., LLC v. Dittmar*, 34 P.3d 995, 1002 (Colo. 2001) apply to the instant

case.  Thus, Plaintiff must prove: (1) Defendant Cannondale used Plaintiff's name or likeness; (2) use of Plaintiff's name or likeness was for Defendant Cannondale's own purposes or benefit, commercially or otherwise; (3) Plaintiff suffered damages; and (4) Defendant Cannondale caused the damages incurred.[6]  *Id.*  There is no dispute that Defendant Cannondale used Giove's image in a limited amount in its 1999 catalog.  (Def.'s Br. at 28.)  Thus, I need only address the second, third, and fourth elements.

### *(1)      Defendant Cannondale Did Not Benefit From the Use of Plaintiff's Name or Likeness*

The second element of the *Joe Dickerson* test requires Plaintiff to show that Defendant Cannondale used Plaintiff's name or likeness for its own *benefit*, commercially or otherwise.  *Joe Dickerson*, 34 P.3d at 1002.  Plaintiff has not presented any facts or evidence to establish this element.  As stated above, Defendant Cannondale produced its 1999 catalog in June or July of 1998.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 24; *admitted at* Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 24.)  This catalog contained three photographs of Giove.  (*Id.*)  At the time Defendant Cannondale printed and initially distributed the 1999 catalog Defendant Cannondale had authority to use Giove's name and likeness.  (*Id.*, Statement of Undisputed Material Facts ¶ 26; *admitted at* Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 26.)  Defendant Cannondale concedes that a small number of catalogs were

---

[6]Even assuming the elements in *Joe Dickerson* do not strictly apply, the Tenth Circuit, interpreting Colorado law, determined that Plaintiff would necessarily have to prove "that the defendant, without [her] consent, used [her] likeness to the defendant's commercial advantage and that [the] defendant's actions in this regard injured [her]."  *Donchez*, 392 F.3d at 1220.  This test mirrors the test enunciated in *Joe Dickerson*.

distributed in 1999, after Giove left the Volvo/Cannondale team.  (*Id.*, Statement of Undisputed

Material Facts ¶¶ 34–38.)  Despite this, Defendant Cannondale asserts, and Plaintiff cannot refute,

that Defendant Cannondale did not receive any benefit from this minimal use.[7]        Specifically,

Ben Giove, on behalf of Plaintiff, testified that he had no knowledge of any benefit Defendant

Cannondale derived from including photos of Giove in the 1999 catalog.  (*Id.*, Statement of

Undisputed Material Facts ¶ 82, Ex. A–1 at 165–66 [Dep. of Ben Giove]; *deemed admitted at*

Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 82.)

> Q.    Do you have any way of knowing whether the picture of []Giove in the catalog
>       would have any impact on [Defendant] Cannondale's customers?
> A.    Again, I have no way of knowing.
>
> * * *
>
> Q.    Can you identify any specific profits that Cannondale has obtained from the use of
>       Giove's name or picture in its 1999 catalog?
> A.    I have no way of knowing that.

(*Id.*, Ex. A–1 at 168 [Dep. of Ben Giove].)  Despite the fact that Ben Giove, Plaintiff's Vice

President and sole operating officer, does not have any information regarding Defendant

Cannondale's alleged benefit, Plaintiff admits that it did not hire an expert witness to assess the

alleged impact or benefit Defendant Cannondale may have received.  (Pl.'s Resp., Resp. to Def.'s

Statement of Undisputed Material Facts ¶ 79.)  Further, Plaintiff does not offer any evidence of

Defendant Cannondale's alleged benefits.  "To avoid summary judgment, Plaintiff must produce

---

[7]I held in my previous order and memorandum of decision in this case that "the use of
Giove's name and likeness is extremely minor when considered in the context of the whole
catalog, which . . . substantially reduces the likelihood that a consumer would even notice []
Giove's presence . . ."  (Order at 28.)

specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any material fact claimed to be disputed." *Branson v. Price River Coal Co.*, 853 F.2d 768, 771–72 (10th Cir. 1988).  Additionally, Plaintiff's own motion for summary judgment acknowledges that the *Joe Dickerson* test applies, but Plaintiff does not attempt to apply this test or recite facts in support of its claim.[8]  (Pl.'s Br. at 7.)

In passing, Plaintiff appears to offer one argument that counsels against this result. Plaintiff asserts that Defendant Cannondale benefitted because it did not incur the cost of having to redo its entire 1999 catalog.  (Pl.'s Resp. at 20.)  This argument misses the point entirely. Under the second element in the *Joe Dickerson* test, Plaintiff must demonstrate that "the use of the plaintiff's name or likeness was for the defendant's own purposes or benefit, commercially or otherwise." *Joe Dickerson*, 34 P.3d at 1002.  The fact that Defendant Cannondale did not have to redo its 1999 catalog does not demonstrate that Defendant Cannondale benefitted from the use of three small photographs of Giove.  Accordingly, Plaintiff cannot establish the second element — that Defendant Cannondale derived any benefit from the use of Giove's name or likeness.

### (2)   *Actual Damages and Causation*

Even assuming Plaintiff could demonstrate facts to support the second element of the *Joe Dickerson* test, Plaintiff has not demonstrated any evidence of actual damages.  The third element of the *Joe Dickerson* test requires Plaintiff to prove that it suffered damages.  *Joe Dickerson*, 34

---

[8]Plaintiff does not address any of the elements of its cause of action in its motion for summary judgment, including damages.  (Pl.'s Br. at 5–8.)  Plaintiff's motion for summary judgment devotes three pages to a recitation of the law regarding the common law tort of "right of publicity" without mentioning any facts or citing any evidence in the record.  (*Id.*)

P.3d at 1002.  Plaintiff alleges that it was injured in five ways by Defendant Cannondale's discrete

use of Giove's picture in its 1999 catalog: (1) unwanted continued association with Defendant

Cannondale; (2) being made to look unprofessional; (3) loss of potential sponsorships; and (4)

loss of control over Giove's name and image.  (Def.'s Br., Statement of Undisputed Material

Facts ¶ 74; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 74.)

As discussed more fully in the factual background section, *Facts* § 1, *supra*, Plaintiff cannot

specify any damages or injury.

     First, Plaintiff's representative, Ben Giove, testified that he cannot distinguish whether the

"unwanted association" that Giove has with Defendant Cannondale was created prior to the 1999

catalog.  (*Id.*, Ex. A–1 at 134–35 [Dep. of Ben Giove].)  Additionally, Ben Giove testified that

there was no way to measure the actual harm Plaintiff suffered from the loss of credibility, loss of

control, or any other confusion.  (*Id.*, Ex. A–1 at 146 [Dep. of Ben Giove].)  Finally, Ben Giove

testified that he was not aware of any sponsors who declined to sign Giove or any other

sponsorship opportunities Giove or Plaintiff may have lost as a result of Defendant Cannondale's

limited use of her pictures.  (*Id.*, Ex. A–1 at 147–48 [Dep. of Ben Giove].)  Despite the fact that

Ben Giove testified he could not measure the actual damages, Plaintiff produces no other evidence

in support of its claim for damages.  Conclusory allegations, without more, are not sufficient to

create a genuine issue of fact on summary judgment.  *Annett v. Univ. of Kansas*, 371 F.3d 1233,

1237 (10th Cir. 2004).

     Rather than produce evidence demonstrating Plaintiff's damages, Plaintiff offers numerous

arguments that counsel against the necessity to demonstrate damages as a part of its claim.  First,

Plaintiff states that "there is no necessity to 'prove' some actual commercial damage in order to establish liability and some damage is presumed when a party's name or likeness is used without his or her consent." (Pl.'s Resp. at 14.) Not only does Plaintiff's argument ignore *Joe Dickerson* and *Donchez*, but Plaintiff's argument is circular. If the court were to adopt Plaintiff's suggestion, it would undoubtedly be putting the proverbial "cart before the horse." In other words, Plaintiff's assertion necessarily assumes the conclusion — that Defendant Cannondale improperly used Giove's name or likeness without her consent.

Second, Plaintiff relies on *Toney v. L'Oreal U.S.A., Inc.*, 406 F.3d 905, 910 (7th Cir. 2005), for the proposition that Plaintiff was necessarily damaged by a continuing unwanted association with Defendant Cannondale and therefore Plaintiff does not need to affirmatively establish damages. In *Toney*, the Seventh Circuit evaluated whether a plaintiff's right of publicity claim was preempted by the Copyright Act. The court in *Toney* determined there was no preemption because the Illinois statute in question has a "commercial purpose" element. *Id.* at 910. The *Toney* court held that "[t]he basis of a publicity claim concerns the message — whether the plaintiff endorses, or appears to endorse the product in question." *Id.* The *Toney* court noted that "[o]ne can imagine many scenarios where the use of a photograph without consent, in apparent endorsement of any number of products, could cause great harm to the photographed person." *Id.* The instant case is not analogous to *Toney* because I previously determined that there was no likelihood consumers would be confused into believing that Giove sponsored or endorsed Defendant Cannondale's products. (Order at 28.) Additionally, *Toney* does not address damages. Further, as noted above, Ben Giove testified that he could not distinguish whether the

unwanted association was created prior to the 1999 catalog.  (Def.'s Br., Ex. A–1 at 134–35 [Dep. of Ben Giove].)  Therefore, unlike the plaintiff in *Toney*, Plaintiff's damages for alleged unwanted association, if any, would necessarily be speculative.  *See Foxley v. Foxley*, 939 P.2d 455, 460 (Colo. 1996) (damages may not be awarded in tort claims as a matter of law if the fact of damage is speculative).

Next, Plaintiff contends that it does not need to produce evidence of damages because it is entitled to the fair market value and it is "seeking a fair market value of $500,000."  (Pl.'s Resp. at 16–18.)  Plaintiff asserts that the only way Defendant Cannondale could have legally obtained the rights to use Giove's name and likeness in 1999 was to pay $500,000 and this measure of damages is supported by case law.  (*Id.*)  In 1997 and 1998, TSMI paid Plaintiff $480,000 for Giove's racing services, including: (1) her agreement to race exclusively for Team Sports, Inc., maintain reasonable competitive fitness throughout the mountain bike racing season, and participate in all races and training sessions organized by Plaintiff and Team Sports, Inc., (Def.'s Br., Ex. A–7 ¶ 1 [Contract For Services]); (2) her use of Defendant Cannondale's equipment, (*id.*, Ex. A–7 ¶ 6 [Contract For Services]); (3) Giove's agreement to participate in a minimum of ten days of promotional services, (*id.*, Ex. A–7 ¶ 8 [Contract For Services]); and (4) Giove's agreement to permit all sponsors to use her name and image for advertising and publicity.  (*Id.*, Ex. A–7 ¶ 9 [Contract For Services].)  Plaintiff's request for $500,000 is speculative in light of the fact that the payment Plaintiff received in 1997 and 1998 included far more than Giove's name and likeness.  (*See id.*, Ex. A–7 *passim* [Contract For Services].)  Giove's entire value as a racer in 1997 and 1998 bears no relationship to the fair market value of three pictures, placed

inconspicuously, on the inside pages of Defendant Cannondale's ninety-six page 1999 catalog.

Thus, in light of Plaintiff's inability to demonstrate its actual damages, Plaintiff's mere recitation

that it suffered $500,000 in damages is speculative.  Again, damages may not be awarded if the

facts of damages are speculative.  *See Foxley*, 939 P.2d at 460.  Additionally, the case law that

Plaintiff cites in support of its contention that it is entitled to the fair market value of $500,000 is

not helpful.

Plaintiff cites *Waits* for the proposition that "a party can receive the fair market value of

the use of the identity used."  (Pl.'s Resp. at 16.)  In *Waits*, the Ninth Circuit awarded damages to

singer Tom Waits after it determined that the evidence was sufficient to establish damages to

Waits' reputation.  *Waits*, 978 at 1104.  Specifically, the *Waits* court determined that "the jury

could have inferred from the evidence that the commercial created a public impression that Waits

was a hypocrite for endorsing Doritos."  *Id.*  The Ninth Circuit went on to explain that "from the

testimony of Waits' expert witness, the jury could have inferred that if Waits ever wanted to do a

commercial in the future, the fee he could command would be lowered by $50,000 . . . because of

the Doritos commercial."  *Id.*  In *Waits*, the Court was able to fashion a damage award because

Waits produced expert testimony and evidence of damages.  *Id.*  Here, Plaintiff has not produced

any evidence of such damages nor has Plaintiff retained an expert to opine on the issue of

damages.  Rather, Plaintiff produced the testimony of Ben Giove who stated that he was unable to

measure the damages.  (Def.'s Br., Ex. A–1 at 143–44, 146–48, 165–66. [Dep. of Ben Giove].)

Again, a party opposing or moving for summary judgment cannot create a genuine issue of

material fact with unsupported, conclusory allegations.  Fed. R. Civ. P. 56(c); *Annett*, 371 F.3d at 1237.

Finally, Plaintiff cites *Welch v. Mr. Christmas*, 57 N.Y. 2d 143 (N.Y. 1982), for the proposition that "[a]n expert opinion is not required because when a party makes use beyond the scope of a license, the amount that previously had been paid for the use is generally considered in computing fair market value."  Again, Plaintiff contends that it is entitled to $500,000 as the fair market value for Giove's name and likeness.  (Pl.'s Resp. at 16.)  As stated above, this amount is entirely speculative because Defendant Cannondale paid Plaintiff $500,000 for all of Giove's services as a racer, not limited to the use of Giove's name or likeness.  (Def.'s Br., Ex. A–7 ¶ 1 [Contract For Services].)  Thus, regardless of whether *Welch* uses the fair market value as the correct measure of damages, Plaintiff has not asserted any damages nor has Plaintiff attempted to demonstrate the fair market value of Giove's name and likeness.

For the reasons set forth above, Plaintiff has not demonstrated any actual damages.  Thus, Plaintiff cannot satisfy the third element of the *Joe Dickerson* test.  Moreover, Plaintiff's inability to establish the third element necessarily means that Plaintiff cannot establish the fourth element — that Defendant Cannondale caused Plaintiff's damages.  *Joe Dickerson*, 34 P.3d at 1002.  If Plaintiff cannot establish damages, *a fortiori*, Plaintiff cannot demonstrate that Defendant Cannondale caused those damages.  Accordingly, Defendant Cannondale is entitled to summary judgment on Plaintiff's third claim for relief in the first action and Plaintiff's only claim for relief in the second action — state-law violation of the right of publicity.

   c.     ***Breach of The Guarantee Agreement***

Plaintiff's twelfth, and only remaining claim for relief, in the first action alleges that "[i]n or about November, [sic] 1996 [Defendant] Cannondale agreed to guarantee the obligations of [TSMI] under The Agreement pursuant to conversations with [P]laintiff and/or [P]laintiff's representatives." (First Action ¶ 88.) Plaintiff alleges that Defendant Cannondale made certain assurances in a fax dated November 1, 1996. (*Id.*) "The fax stated in relevant part that if Volvo had not continued as a sponsor of the 1998 Volvo/Cannondale team, '[Defendant] Cannondale will guarantee to pay [TSMI] to insure that [TSMI] is able to meet its contractual agreement with [Giove] for the 1998 season.'" (Def.'s Br. at 38 [quoting First Action, Ex. B (Nov. 1, 1996 facsimile)].)

On January 10, 2000, Plaintiff dismissed its claims with prejudice against TSMI for failure to perform under the underlying agreement. (Order of Dismissal.) It follows, that Plaintiff's inability to prove any primary breach by TSMI in obtaining funding prohibits Plaintiff from pursuing Defendant Cannondale for its alleged failure to guarantee TSMI's performance. Additionally, Plaintiff conceded that its prior dismissal of TSMI barred any further claim against Defendant Cannondale under the guarantee. (Def.'s Br., Ex. A–5 [1/14/00 Letter From Pl.'s Att'y to Def. Cannondale's Att'y].) Specifically, in a letter dated January 14, 2000, Plaintiff's counsel stated "[t]he twelfth cause of action is now moot because my client has settled with [TSMI]." (*Id.*) Finally, while Plaintiff did not expressly confess this claim, Plaintiff did not respond or address its twelfth claim in its response to Defendant Cannondale's motion for summary judgment. (*Id.*, *passim.*) Accordingly, Defendant Cannondale is entitled to summary

judgment on Plaintiff's twelfth claim for relief in the first action entitled "[Defendant]

Cannondale's guarantee of [TSMI's] obligations." (*See* First Action ¶¶ 87–90.)

### 4.      *Conclusions*

Based on the foregoing it is therefore

ORDERED as follows:

1.      Plaintiff's motion for a ruling on diversity of citizenship in civil action

99–cv–00571, (# 185) is DENIED.

2.      Defendant Cannondale's motion for summary judgment in civil action

99–cv–00571, (# 188) is GRANTED.

3.      Plaintiff's motion for summary judgment in civil action 99-cv-00571, (# 189) is

DENIED.

4.      Plaintiff's motion for a ruling on diversity of citizenship in civil action

00–cv–02063, (# 78) is DENIED.

5.      Plaintiff's motion to remand in civil action 00–cv–02063, (# 79) is DENIED.

6.      Plaintiff's motion for summary judgment in civil action 00–cv–02063, (# 81) is

DENIED.

7.      Defendant Cannondale's motion for summary judgment in civil action

00–cv–02063, (# 84) is GRANTED.

8.      Defendant Cannondale's state-law counterclaims remain pending in this court.

9.      The hearing set to commence at 10:00 o'clock a.m. on March 10, 2006 is

VACATED.

10.     The court will hold a Final Pretrial Conference commencing at 4:15 o'clock p.m. on March 22, 2006, in Courtroom A1001 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.  In preparing for and participating in the conference, the parties and counsel will (1) follow the Instructions for Preparation and Submission of Final Pretrial Order, a copy of which can be downloaded from the court's web site, specifically http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord_ins.pdf and (2) utilize the specific template located at http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord.wpd  These specific web addresses should be used to insure that the proper format is observed.

Dated this 9th day of March, 2006.


BY THE COURT:


_____
EDWARD W. NOTTINGHAM
United States District Judge